AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| United States of America<br>v.<br>Albert A. Ciarpelli | ) Case: 1:21-mj-00038<br>) Assigned to: Judge Robin M. Meriweather<br>) Assigned Date: 1/12/2021<br>) Description: COMPLAINT W/ARREST WARRANT<br>) |
| *Defendant* | |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)*    Albert A. Ciarpelli                                                                                            ,
who is accused of an offense or violation based on the following document filed with the court:

❐ Indictment         ❐ Superseding Indictment      ❐ Information      ❐ Superseding Information      ☑ Complaint
❐ Probation Violation Petition      ❐ Supervised Release Violation Petition      ❐ Violation Notice      ❐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. 1752(a)(1)- Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority

40 U.S.C. 5104(e)(2)- Violent Entry and Disorderly Conduct on Capitol Grounds

Robin M. Meriweather
2021.01.12 17:16:16
-05'00'

Date:     01/12/2021

*Issuing officer's signature*

City and state:    Washington, DC

Robin M. Meriweather, U.S. Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)*  1/12/21  , and the person was arrested on *(date)*  1/13/21<br>at *(city and state)*  SYRACUSE, NY  .<br><br>Date:  1/14/21<br><br>*Arresting officer's signature*<br><br>HARRISON L. CROW   FBI SA<br>*Printed name and title* |

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

District of Columbia

United States of America )
v. )
)
Albert A. Ciarpelli )
████████████ )
)
)
)

Case: 1:21-mj-00038
Assigned to: Judge Robin M. Meriweather
Assigned Date: 1/12/2021
Description: COMPLAINT W/ARREST WARRANT

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___January 6, 2021___ in the county of _____ in the
_____ District of ___Columbia___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1752(a)(1) | Knowingly Entering or Remaining in any Restricted Building or Grounds Without Lawful Authority |
| 40 U.S.C. 5104(e)(2) | Violent Entry and Disorderly Conduct on Capitol Grounds |

This criminal complaint is based on these facts:

See attached statement of facts.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Cameron Mizell, FBI
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
Telephone (specify reliable electronic means).

Date: ___January 12, 2021___                    _____
*Judge's signature*

City and state: ___Washington, D.C.___          Robin M. Meriweather, U.S. Magistrate Judge
_____
*Printed name and title*

**STATEMENT OF FACTS**
**IN SUPPORT OF CRIMINAL COMPLAINT AGAINST**
**ALBERT A. CIARPELLI**

1.  Your affiant is a Special Agent with the Federal Bureau of Investigation. I am authorized by law or by a Government agency to engage in or supervise the prevention, detention, investigation, or prosecution of a violation of Federal criminal laws.

2.  The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

3.  On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

4.  On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

5.  As the proceedings continued in both the House and the Senate, and with Vice President Mike Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

6.  At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

7.  At such time, the certification proceedings still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

8. Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

9. During national news coverage of the aforementioned events, video footage which appeared to be captured on mobile devices of persons present on the scene depicted evidence of violations of local and federal law, including scores of individuals inside the U.S. Capitol building without authority to be there.

10. The Metropolitan Police Department (MPD), Criminal Investigative Division, issued a 29 page be on the look-out (BOLO) bulletin to the public seeking to identify individuals depicted in images who made unlawful entry into the U.S. Capitol Building on Wednesday, January 6, 2021. The Federal Bureau of Investigation (FBI) issued similar bulletins to the public requesting assistance from the public in identifying the individuals depicted in the same images.

11. On Friday, January 8, 2021, the FBI, Albany Division, Syracuse Resident Agency was contacted by the U.S. Marshals Service (USMS) and provided with the name of William "Billy" Sullivan (Sullivan), defense attorney for ALBERT A. CIARPELLI (CIARPELLI), of Syracuse, New York, date of birth (DOB) ███████████. Sullivan stated that he called the USMS because he believed that his client, CIARPELLI, had an outstanding arrest warrant for having made unlawful entry into the U.S. Capitol Building on January 6, 2021. Sullivan was referred to the FBI and was contacted by Special Agent (SA) Harrison Crow by phone.

12. Sullivan initially advised SA Crow that CIARPELLI was in Washington D.C. and participated in the protests but did not make entry into the U.S. Capitol. Later the same day, Sullivan spoke with SA Crow, again by phone, and advised that CIARPELLI may have been in the U.S. Capitol during the riots as publicly available images and/or video pictured CIARPELLI doing the same. According to Sullivan, CIARPELLI called Sullivan after CIARPELLI's neighbor informed CIARPELLI that he was pictured on the news as one of the individuals who made unlawful entry into the U.S. Capitol. CIARPELLI's neighbor believed that the FBI had an arrest warrant for CIARPELLI.

13. On January 8, 2021, the Central NY News posted an article on the internet located at uniform resource locator (URL): https://www.syracuse.com/news/2021/01/syracuse-man-appears-as-person-of-interest-by-fbi-and-dc-police-investigating-us-capitol-riot.html. The article identified the individual in one of the photos circulated by law enforcement as CIARPELLI, a longtime Central New York resident who owns real estate in the surrounding area. According

to the article, CIARPELLI was contacted by phone for an interview but had Sullivan contact the news outlet on his behalf. Sullivan advised the news outlet that CIARPELLI was at the protests in Washington D.C. but had done nothing illegal while there. Sullivan was provided with two images by the news outlet of CIARPELLI, along with other individuals, in the hallway near the Senate chamber. Sullivan advised that he would need to consult further with his client before commenting.

14. In the photos from inside the Capitol on January 6, CIARPELLI's face can be clearly seen, as he was wearing no face or head covering. A comparison of CIARPELLI's New York State driver's license photo (taken on August 23, 2019) and the MPD BOLO photo, as well as the photos produced by the news outlet, positively identifies CIARPELLI as the subject pictured in the BOLO and the other photos produced by the news outlet. Specifically, CIARPELLI is a white male with all grey hair and a distinct curl on the right forehead portion of his hairline.

15. On January 10, 2021, in Syracuse, New York, CIARPELLI was interviewed by Agents of the FBI from the Albany Division and the Washington Field Office in the presence of his defense attorney, Sullivan. Agents informed CIARPELLI at the outset of the interview that it was voluntary, that he was free to leave, and that he was not under arrest, and at the conclusion of the interview CIARPELLI in fact left.

16. During the interview, Agents showed CIARPELLI photos from inside the U.S. Capitol on January 6, 2021.  CIARPELLI identified himself in the following three photos[1] (with red arrows added later, to single out the particular person in the photo):

   a.



---

1.  Please be aware that on January 11, 2021, I spoke with a tipster who had sent a tip to the FBI identifying the BOLO photo of CIARPELLI as a person other than CIARPELLI.

b.



c.



17. CIARPELLI told Agents that he learned of the Trump rally on that would be occurring on January 6, 2021, from television ads that he had seen prior to that day. CIARPELLI had attended at least one Trump rally previously in Washington D.C. in November of 2020. CIARPELLI attended that rally alone.

18. CIARPELLI told Agents that on January 5, 2021, CIARPELLI traveled to Washington D.C. alone in his Nissan Frontier to attend the Trump rally the following day. He left his home in Syracuse, New York, at approximately 5 a.m. and drove southbound on Interstate 81 toward Washington D.C. CIARPELLI arrived at his hotel, the State Plaza Hotel located at 2117 E Street NW, Washington D.C., between 11 and 11:30 a.m. and checked in. He parked his vehicle in the hotel garage where it remained until he left Washington D.C. on January 7, 2021 to return home to Syracuse, New York. CIARPELLI selected the hotel because it was inexpensive, and it was within walking distance to the rally. CIARPELLI did not meet up with anyone in Washington D.C. for the rally nor did he socialize much with others who attended.

19. CIARPELLI told Agents that on January 6, 2021, CIARPELLI walked from his hotel to attend the rally. He was at the rally for approximately two to three hours. After the rally, he and the other attendees walked down Pennsylvania Avenue toward the U.S. Capitol where the protest ensued. CIARPELLI followed a group of people who broke through the crowd at the protest and made his way up toward the entrance of the U.S. Capitol. When he arrived at the Capitol entrance, he found a small door to the right of the main entrance to the building that was wide open. The door was ajar and some of the glass in the door was broken. CIARPELLI told Agents that he then did something that he knew he should not have and made his way into the building.

20. CIARPELLI told Agents that CIARPELLI walked into the building and began taking pictures from his phone. He made his way up the staircase to the second floor of the building and took a picture of a painting of President Andrew Jackson, whom CIARPELLI admires. CIARPELLI observed approximately 10 to 15 protestors on the second floor with him as well as five to six law enforcement officers. CIARPELLI took his time making his way through the building taking pictures and looking at the states. He had never been in the building before and he was sight-seeing. CIARPELLI considered his time in the U.S Capitol to be a "little adventure." During a portion of the time he was in the U.S. Capitol, CIARPELLI was close in proximity to another male protestor who was noticeably more aggressive and worked up.

21. CIARPELLI told Agents that CIARPELLI was in the U.S. Capitol for approximately 15 minutes when he got the feeling that he should not be there and decided to leave. While inside, CIARPELLI observed other protestors who were wearing para-military clothing. Some had helmets and body armor. Some had on green military style pants. One protestor with a bare chest, face paint, and wearing horns on his head did not seem right, was getting rowdy, and seemed like he was trouble.

22. CIARPELLI told Agents that he decided to leave the U.S. Capitol the same way he entered, but when he tried to leave the building he got caught up in a mob that was pushing its way into the building. CIARPELLI was able to make his way out a short time later. He then returned to his hotel and prepared to leave for New York the next morning. When thinking back to what occurred that day CIARPELLI stated that he was out of his mind and had never done anything like that before.

23. CIARPELLI told Agents that CIARPELLI owns a vacation home in the greater Tampa, Florida area where his wife resides during the winter months. The two have children and grandchildren in Florida. CIARPELLI periodically joins his wife throughout the winter in Florida travelling from New York where he remains to manage rental/income properties that he owns.

24. CIARPELLI told Agents that, prior to the inauguration on January 20, 2021, CIARPELLI intended to travel to join his wife in Florida at their vacation home. CIARPELLI then planned to return to Washington D.C. for the inauguration of, who he anticipated would be, President Trump. He purchased flights on October 28, 2020 for travel on January 19, 2021 from Tampa to DCA, with a returning flight from DCA to Tampa on January 22, 2021. He purchased the same flights for his wife and one other individual on the same credit card. CIARPELLI told Agents that he recently cancelled his travel for the inauguration.

25. According to a database search, CIARPELLI's personal vehicle, a black 2014 Nissan Frontier pick-up truck, was photographed traveling southbound on Interstate 81 in Binghamton, New York on January 5, 2021 at 5:24 a.m., the day prior to the protest/riot. The same vehicle was photographed traveling northbound in Binghamton, New York at 11:07 a.m. on January 7, 2021, the day after the protest/riot.

26. Based on the foregoing, your affiant submits that there is probable cause to believe that CIARPELLI violated 18 U.S.C. § 1752(a)(1) and (2), which make it a crime to (1) knowingly enter or remain in any restricted building or grounds without lawful authority to do; and (2) knowingly, and with intent to impede or disrupt the orderly conduct of Government business or official functions, engage in disorderly or disruptive conduct in, or within such proximity to, any restricted building or grounds when, or so that, such conduct, in fact, impedes or disrupts the orderly conduct of Government business or official functions; or attempts or conspires to do so. For purposes of Section 1752 of Title 18, a "restricted building" includes a posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service, including the Vice President, is or will be temporarily visiting; or any building or grounds so restricted in conjunction with an event designated as a special event of national significance.

27. Your affiant submits there is also probable cause to believe that CIARPELLI violated 40 U.S.C. § 5104(e)(2)(D), (E), and (G), which make it a crime to willfully and knowingly (D) utter loud, threatening, or abusive language, or engage in disorderly or disruptive conduct, at any place in the Grounds or in any of the Capitol Buildings with the intent to impede, disrupt, or disturb the orderly conduct of a session of Congress or either House of Congress, or the orderly conduct in that building of a hearing before, or any deliberations of, a committee of Congress or either House of Congress; (E) obstruct, or impede passage through or within, the Grounds or any of the Capitol Buildings; and (G) parade, demonstrate, or picket in any of the Capitol Buildings.

SPECIAL AGENT CAMERON MIZELL
FEDERAL BUREAU OF
INVESTIGATION

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 12th day of January 2021.

Robin M. Meriweather
2021.01.12 17:17:00
-05'00'

ROBIN M. MERIWEATHER
U.S. MAGISTRATE JUDGE

AO 466A (Rev. 12/17)  Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
for the
Northern District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   5:21-MJ-0022 (ML) |
| | ) | |
| Albert A. Ciarpelli | ) | Charging District's Case No.   1:21-MJ-00038 |
| *Defendant* | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
(Complaint or Indictment)

I understand that I have been charged in another district, the *(name of other court)*      District of Columbia

I have been informed of the charges and of my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)    an identity hearing to determine whether I am the person named in the charges;

(3)    production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)    a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)    a hearing on any motion by the government for detention;

(6)    request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

❏    an identity hearing and production of the warrant.

❏    a preliminary hearing.

❏    a detention hearing.

❏    an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district.  I request that my
❏ preliminary hearing and/or ❏ detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:    1/13/21

_____
*Defendant's signature*

_____
*Signature of defendant's attorney*

WILLIAM C. SULLIVAN
*Printed name of defendant's attorney*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

ALBERT A. CIARPELLI,

Defendant.

5:21-MJ-0022
(ML)

---

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER

This Order is entered, pursuant to Federal Rule of Criminal Procedure 5(f) and the Due Process Protections Act, Pub. L. No 116–182, 134 Stat. 894 (Oct. 21, 2020), to confirm the Government's disclosure obligations under *Brady* v. *Maryland*, 373 U.S. 83 (1963), and its progeny, and to summarize the possible consequences of violating those obligations.

The Government must disclose to the defense all information "favorable to an accused" that is "material either to guilt or to punishment" and that is known to the Government. *Brady*, 373 U.S. at 87. This obligation applies regardless of whether Defendant requests this information or whether the information would itself constitute admissible evidence. The Government shall disclose such information to the defense promptly after its existence becomes known to the Government so that the defense may make effective use of the information in the preparation of its case.

As part of these obligations, the Government must disclose any information that can be used to impeach the trial testimony of a Government witness within the meaning of *Giglio v. United States*, 405 U.S. 150 (1972), and its progeny. Such information must be disclosed sufficiently in

advance of trial, in order for Defendant to make effective use of it at trial or at such other time as the Court may order.[1]

The foregoing obligations are continuing ones and apply to materials that become known to the Government in the future.  These obligations also apply to information that is otherwise subject to disclosure regardless of whether the Government credits it.

In the event the Government believes that a disclosure under this Order would compromise witness safety, victim rights, national security, a sensitive law-enforcement technique, or any other substantial government interest, it may apply to the Court for a modification of its obligations, which may include in camera review or withholding or subjecting to a protective order, all or part of the information otherwise subject to disclosure.[2]

For purposes of this Order, the Government has an affirmative obligation to seek all information subject to disclosure under this Order from all current or former federal, state, and local prosecutors, law enforcement officers, and other officers who have participated in the prosecution, or investigation that led to the prosecution, of the offense or offenses with which Defendant is charged.

If the Government fails to comply with this Order, the Court, in addition to ordering production of the information, may:

(1) specify the terms and conditions of such production;

(2) grant a continuance;

(3) impose evidentiary sanctions;

---

[1]     This Order does not purport to set forth an exhaustive list of the Government's disclosure obligations.

[2]     The Classified Information Procedures Act sets forth separate procedures to be followed in the event that the Government believes matters relating to classified information may arise in connection with the prosecution.  *See* 18 U.S.C. app. 3 §§ 1 *et seq.*

2

(4) impose contempt or other sanctions on any lawyer responsible for violations of the Government's disclosure obligations, or refer the matter to disciplinary authorities;

(5) dismiss charges before trial or vacate a conviction after trial or a guilty plea; or

(6) enter any other order that is just under the circumstances.


SO ORDERED.

Dated: January 13, 2021
       Binghamton, NY

_____
United States Magistrate Judge

AO 199A Order Setting Conditions of Release

# United States District Court
## Northern District of New York

United States of America

**V.**

Albert A. Ciarpelli
Defendant

**ORDER SETTING CONDITIONS
OF RELEASE**

Case Number: 5:21-MJ-0022 (ML)

IT IS ORDERED that the release of the defendant is subject to the following conditions:

(1)     The defendant shall not commit any offense in violation of federal, state or local law while on release in the case.

(2)     The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a.

(3)     The defendant shall immediately advise the court, defense counsel and the U.S. Attorney in writing before any change in address and telephone number.

(4)     The defendant shall appear at all proceedings as required and shall surrender for service of any sentence imposed as directed.  The defendant shall appear at (if blank, to be notified)

        District of Columbia - Via Video    on    January 25, 2021 at 1:00PM    .
                   place                            date and time

### Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released provided that:

(✓)     (5) The defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

( )     (6) The defendant executes an unsecured bond binding the defendant to pay the United States the sum of _____ dollars ($_____) in the event of a failure to appear as required or to surrender as directed for service of any sentence imposed.

### Additional Conditions of Release

Upon finding that release by one of the above methods will not by itself reasonably assure the appearance of the defendant and the safety of other persons and the community.

IT IS FURTHER ORDERED that the release of the defendant is subject to the conditions marked below:

( )     (7) The defendant is placed in the custody of:
        (Name of person or organization):_____

        (City and state):_____ (Tel. No.):_____ who agrees (a) to supervise the defendant in accordance with all the conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

                        Signed:_____  _____
                                    Custodian or Proxy                    Date

AO 199A Order Setting Conditions of Release

### Additional Conditions of Release (continued)

( )      (8)  The defendant shall:

( ) (a)  Report to the Pretrial Services within 24 hours of release, telephone number (315) 234-8700, and as directed thereafter. The defendant shall allow a probation officer to visit at anytime at the defendant's home or elsewhere, and shall permit confiscation of any contraband observed in plain view of the probation officers. The defendant shall refrain from possessing a firearm, destructive device, or other dangerous weapon.

( ) (b)  Execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property:

( ) (c)  Post with the court the following indicia of ownership of the above-described property, or the following amount or percentage of the above-described:

( ) (d)  Execute a bail bond with solvent securities in the amount of $

( ) (e)  Maintain or actively seek employment.

( ) (f)  Maintain or commence an educational program.

( ) (g)  Surrender any passport to: **The Clerk of the Court[1]**.

( ) (h)  Obtain no passport.

( ) (i)  Restrict travel to the Northern District of New York unless approved by Pretrial Services or the Court.

( ) (j)  Remain at an authorized address as approved by Pretrial Services or the Court.

( ) (k)  Avoid all contact with codefendants and defendants in related cases unless approved by Pretrial Services or the Court.

( ) (l)  Avoid all contact, directly or indirectly, with any persons who are or who may become a victim or potential witness in the subject investigation or prosecution, including but not limited to:

( ) (m)  Submit to a mental health evaluation and/or treatment as approved by Pretrial Services or the Court. The defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or availability of third party payments.

( ) (n)  Return to custody each (week)day as of  after being released each (week)day as of  for employment, schooling, or the following limited purpose(s): .

( ) (o)  Maintain residence at a halfway house or community corrections center, as approved by Pretrial Services or the Court.

( ) (p)  Refrain from ( ) any ( ) excessive use of alcohol.

( ) (q)  Refrain from possession, use, distribution, importation, or manufacture of any and all controlled substances and any and all controlled substance analogues, as defined in 21 U.S.C. §802, except that possession and use of a controlled substance properly prescribed by a licensed medical practitioner is permitted.

( ) (r)  Submit to any method of testing required by the pretrial services office or the supervising officer for determining whether the defendant is using a prohibited substance. Such methods may be used with random frequency and include urine testing, the wearing of a sweat patch, and/or a remote alcohol testing system.

( ) (s)  Participate in and successfully complete a program of outpatient or inpatient substance abuse therapy and counseling. Outpatient treatment shall be approved by Pretrial Services or the Court. Inpatient substance abuse treatment shall be approved by the Court. The defendant shall contribute to the cost of services rendered in an amount to be determined by the probation officer based on ability to pay or availability of third party payments.

( ) (t)  Refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or electronic monitoring which is (are) required as a condition(s) of release.

( ) (u)  Participate in one of the following home confinement program components and abide by all the requirements of the program which ( ) will or ( ) will not include electronic monitoring or other location verification system. You shall pay all or part of the cost of the program as determined by the probation officer based upon ability to pay.

( ) (v)  The defendant is restricted to the defendant's residence every day ( ) from  to  or ( ) as directed by Pretrial Service of the Court.

( ) (w)  **Home Detention.**  The defendant is restricted to the defendant's residence at all times except for employment; education; religious services; medical, substance abuse, or mental treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by Pretrial Services or the Court.

( ) (x)  **Home Incarceration.**  The defendant is restricted to the defendant's residence at all times except for medical needs or treatment, religious services, and court appearances pre-approved by Pretrial Services or the Court.

( ) (y)  Report within 72 hours, to Pretrial Services or the Court any contact with any law enforcement personnel, including, but not limited to, any arrest, questioning, or traffic stop.

( ) (z)  Not commit another crime, in the United States or elsewhere (including any criminal violation of the law of any province, state, county, town, city, village, or other subdivision of a country, or of any recognized tribe).

( ) (sc.1) The defendant shall not possess or use a computer, data storage device, or any internet capable device without the approval of Pretrial Services or the Court.

---

[1] For U.S. Passports, the passport will be returned to the U.S. Office of Passport Policy and Planning upon conviction; For Foreign Passports, the passport will be forwarded to the Bureau of Immigration and Customs Enforcement (ICE); The passport will **only** be return to the defendant if the case is dismissed.

AO 199A Order Setting Conditions of Release

( ) (sc.2) The defendant shall not use or possess any computer, data storage device, or any internet capable device, at any location, except at your place of employment, unless you participate in the Computer and Internet Monitoring Program (CIMP), or unless authorized by the Court or the U.S. Probation Office. If placed in the CIMP, the defendant will comply with all the rules of the program and pay the costs associated with the program. The U.S. Probation Office may use and/or install any hardware or software system that is needed to monitor the defendant's use of a computer or internet capable device. You shall permit the U.S. Probation Office to conduct periodic, unannounced examinations of any computer equipment, including any data storage device, and internet capable device you use or possess. This equipment may be removed by the U.S. Probation Office or their designee for a more thorough examination. The defendant may be limited to possessing one personal internet capable device, to facilitate the U.S. Probation Office's ability to effectively monitor his or her internet related activities.

( ) (sc.3) The defendant shall not frequent places where persons under the age of 18 are likely to congregate. This shall include, but is not limited to, schools, parks and arcades, unless it is approved by Pretrial Services or the Court.

( ) (sc.4) The defendant shall not have any direct contact with a person under the age of 18 unless it is supervised by a person approved of by the Pretrial Services or the Court. You shall not have indirect contact with a person under the age of 18 through another person or through a device (including a telephone, computer, radio, or other means) unless it is supervised by a person approved of by Pretrial Services or the Court. You shall reasonably avoid and remove yourself from situations in which you have any other form of contact with a minor.

( ) (sc.5) The defendant shall not subscribe to or use any Internet services at any location without the approval of Pretrial Services or the Court. Telephone bills, credit card bills and service agreements shall be provided upon the request of Pretrial Services or the Court.

( ) (sc.6) The defendant shall not utilize any Internet site directly or through another person unless it is approved by Pretrial Services or the Court.

( ) (sc.7) The defendant shall participate in a mental health program which shall include medical, psychological, or psychiatric evaluation, and may include participate in a treatment program for sexual disorders. The program shall be approved by the United States Probation Office.

( ) (sc.8) The defendant shall contribute to the cost of any evaluation, testing, treatment and/or monitoring services rendered in an amount to be determined by the United States Probation Office based on your ability to pay and the availability of third party payments.

( ) (sc.9) The Court finds there is a reasonably foreseeable risk that you may engage in criminal conduct similar or related to the present offense or your past criminal conduct. Therefore, the Court directs you to notify of risks that may be occasioned by your criminal record or personal history or characteristics, and directs the probation officer to confirm your compliance with this notification requirement.

( )

( )

rev. (4/2006)

AO 199A Order Setting Conditions of Release

**Advice of Penalties and Sanctions**

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCATIONS:

A violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of release, an order of detention, and a prosecution for contempt of court and could result in a term of imprisonment, a fine or both.

The commission of a Federal offense while on pretrial release will result in an additional sentence of a term of imprisonment of not more than ten years, if the offense is a felony; or a term of imprisonment of not more than one year, if the offense is a misdemeanor. This sentence shall be in addition to any other sentence.

Federal law makes it a crime punishable by up to ten years of imprisonment and a $250,000 fine or both to obstruct a criminal investigation. It is a crime punishable by up to ten years of imprisonment, and a $250,000 fine or both to tamper with a witness, victim or informant; or to intimidate or attempt to intimidate a witness, victim, juror, informant or officer of the court. The penalties for tampering, retaliating and intimidation are significantly more serious if they involve a killing or attempting killing.

If after release, you knowingly fail to appear as required by the conditions of release, or to surrender for the service of sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:
    (1)    an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, you shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;
    (2)    an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, you shall be fined not more than $250,000 or imprisoned for not more than five years, or both;
    (3)    any other felony, you shall be fined not more than $250,000 or imprisoned for not more than two years, or both;
    (4)    a misdemeanor, you shall be fined not more than $100,000 or imprisoned for not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be in addition to the sentence for any other offense. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

**Acknowledgement of Defendant**

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
Signature of Defendant

_____
City and State

**Directions to United States Marshal**

(X) The defendant is ORDERED release after processing.

( ) The United States Marshal is ORDERED to keep the defendant in custody until notified by the clerk or judicial officer that the defendant has posted bond and/or complied with all other conditions for release. The defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date: _____  January 21, 2021 _____

_____
U.S. Magistrate Judge

CLOSED

# U.S. District Court
# Northern District of New York - Main Office (Syracuse) [NextGen CM/ECF Release 1.5 (Revision 1.5.3)] (Syracuse)
# CRIMINAL DOCKET FOR CASE #: 5:21-mj-00022-ML All Defendants

---

Case title: USA v. Ciarpelli                        Date Filed: 01/13/2021
Other court case number:  1:21-MJ-0038 District of Columbia     Date Terminated: 01/21/2021

---

Assigned to: Magistrate Judge Miroslav
Lovric

**Defendant (1)**

**Albert A. Ciarpelli**                  represented by   **William C. Sullivan**
*TERMINATED: 01/21/2021*                              Sullivan Law Office
                                                       4030 New Court Avenue
                                                       Syracuse, NY 13206
                                                       315-476-8144
                                                       Fax: 315-476-8147
                                                       Email: sullivanlaw@mac.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*
                                                       *Designation: Retained*
                                                       *Bar Status: Active*
                                                       *Fee Status: paid_2019*

**Pending Counts**                           **Disposition**

None

**Highest Offense Level (Opening)**

None

**Terminated Counts**                         **Disposition**

None

**Highest Offense Level (Terminated)**

None

**Complaints**                                **Disposition**

18:1752.P - Knowingly Entering and
Remaining in any restricted Building or
Grounds Without Lawful Authority

40:193F.P - Violent Entry and Disorderly
Conduct on Capitol Grounds.

---

**Plaintiff**

**USA**                                    represented by   **Andrew Douglas Beaty**
                                                            Office of the United States Attorney -
                                                            Syracuse
                                                            P.O. Box 7198
                                                            100 South Clinton Street
                                                            Syracuse, NY 13261-7198
                                                            315-448-0703
                                                            Email: andrew.beaty@usdoj.gov
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: Assistant US Attorney*
                                                            *Bar Status: Active*
                                                            *Fee Status: waived_2019*

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 01/13/2021 | 1 | Rule 5 Documents Received as to Albert A. Ciarpelli (Attachments: # 1 Affidavit)(jdp ) (Entered: 01/14/2021) |
| 01/13/2021 | | Rule 5 arrest of Albert A. Ciarpelli. (jdp ) (Entered: 01/14/2021) |
| 01/13/2021 | | NOTICE OF HEARING as to Albert A. Ciarpelli Initial Appearance on Charges from Other District set for 1/13/2021 at 4:00 PM before Magistrate Judge Miroslav Lovric. (jdp ) (Entered: 01/14/2021) |
| 01/13/2021 | | Minute Entry for proceedings held before Magistrate Judge Miroslav Lovric: an initial appearance and removal proceeding pursuant to Fed. R. Crim. P. 5 was held on 1/13/2021. The parties consented to proceeding by video conferencing due to the COVID-19 pandemic and pursuant to the CARES Act and G.O. 59. The Government and Defendant were provided copies of the complaint and affidavit. Defendant was advised of all of his rights, the charges, the applicable maximum penalties, the right to an identity hearing, the right to a formal removal hearing, and the right to a preliminary hearing. Defendant was advised of the Fed. R. Crim. P. 20 provisions. Pursuant to Fed. R. Crim. P. 5(f), the Court advised the Government of its Brady obligations and the consequences of failing to comply. The Government did not seek detention. Defendant waived (1) an identity hearing and admitted that he is the person named in the Complaint and arrest warrant, (2) a preliminary hearing, and (3) a formal removal hearing and agreed to be removed to the District of Columbia. The Court found Defendant's waivers to be made knowingly and voluntarily, and accepted Defendant's waivers. The Court ordered that the matter be removed to the District of Columbia, released Defendant on his own recognizance, ordered Defendant to appear in the District of Columbia for an initial appearance on 1/25/2021 at 1:00 p.m., via video conferencing, and set the following two conditions of release: (1) Defendant is not to commit any other local, state, or federal criminal offense; and (2) Defendant is to appear at all proceedings in the District of Columbia as directed by the Court. Appearances: A. Beaty, Esq., AUSA for the Government; W. Sullivan, Esq., for the Defendant; Albert Ciarpelli, Defendant; M. Martinez, U.S. Probation Officer; and V. Theleman, Court Reporter. (jdp ) (Entered: 01/15/2021) |

| 01/13/2021 | 2 | TEXT ORDER: Defendant's waivers, as set forth on the record at the 1/13/2021, initial appearance and removal proceeding, were made knowingly and voluntarily, and are accepted by the Court. This matter and Defendant are removed to the District of Columbia. Defendant is released on his own recognizance, ordered to appear in the District of Columbia for an initial appearance on 1/25/2021 at 1:00 p.m., via video conferencing, and directed to abide by the following two conditions of release: (1) Defendant shall not commit any other local, state, or federal criminal offense; and (2) Defendant shall appear at all proceedings in the District of Columbia as directed by the Court. SO ORDERED by Magistrate Judge Miroslav Lovric on 1/13/2021. (jdp ) (Entered: 01/15/2021) |
| --- | --- | --- |
| 01/13/2021 | 3 | BRADY ORDER as to Albert A. Ciarpelli. Signed by Magistrate Judge Miroslav Lovric on 1/13/2021. (jdp ) (Entered: 01/15/2021) |
| 01/15/2021 | 4 | WAIVER of Rule 5 Hearings in this District by Albert A. Ciarpelli (jdp ) (Entered: 01/15/2021) |
| 01/21/2021 | 5 | ORDER Setting Conditions of Release as to Albert Ciarpelli. Signed by Magistrate Judge Miroslav Lovric on 1/21/2021. (jdp) (Entered: 01/21/2021) |
| 01/21/2021 | | TEXT NOTICE to the Clerk, District of Columbia of a Rule 5, Rule 32, or Rule 40 Appearance as to Albert A. Ciarpelli: Your case number is: 1:21-MJ-0038. On 1/13/2021, Defendant appeared in the NDNY as a result of an arrest warrant issued. The defendant waived his/her right to all hearings in this district and was released. NDNY did not collect a bond or passport. Please use PACER Court Links to access the public docket and documents. (jdp ) (Entered: 01/21/2021) |